WILLIAM H. DOYLE v. ADOLPH LEITELT AND THE COCK-
BURN ISLAND TIMBER COMPANY.

*Corporations—Creditor's bill.*

Complainant, a judgment creditor of the defendant corporation,
filed a bill to reach certain assets alleged to belong to the cor-
poration, and to have been transferred to the defendant Leitelt,
who was its president, and to have been wrongfully disposed
of by him. And on a review of the evidence it is held that
there is nothing in the case to move the conscience of a court
of equity in behalf of complainant. No questions of law are
involved.

Appeal from Wayne. (Reilly, J.) Argued June 28,
1893. Decided October 27, 1893.

Judgment creditor's bill. Complainant appeals. Decree
affirmed. The facts are stated in the opinion.

*Sands F. Moore* (*F. H. Canfield,* of counsel), for com-
plainant.

*Fletcher & Wanty,* for defendant Leitelt.

HOOKER, C. J. The complainant is one of two brothers,
who were engaged in business at Detroit under the name
of Doyle Bros. In the year 1880 the Canadian govern-
ment issued what is called a "timber license" to John A.
H. Campbell and Charles Wilson Pratt, which license gave
said Campbell and Pratt authority to cut timber upon
certain lands upon the north half of Cockburn island,
subject to certain restrictions, and · upon conditions pre-
scribed by the instrument and by law, for the period of one
year ending April 30, 1881. This license was renewed to
April 30, 1882. On November 7, 1881, an indorsement
was made by the "department" that it had been trans-

ferred to H. B. Rathbun & Son. Under such license, timber might be cut, subject to payment to the government of certain prices, which amount to about the same as the stumpage value where the land is owned by private persons. The legal title was in the Rathbuns, as security for the indebtedness of $6,400 due them from Campbell and Pratt. The Doyles, in connection with Campbell and Pratt, or under their authority, engaged in lumbering upon said tract. Just what the arrangement was does not appear, but the Doyles seem to have been known upon the island in connection with the business. William H. Doyle testified that in 1882 he and his brother had an option for these limits, though he was unable to state much about its character, and it does not very satisfactorily appear. At all events, the Doyles succeeded in selling to defendant Leitelt and one Ransom a half interest in the license for $9,000. Of this sum $6,400 was paid to Rathbun & Son, and the remaining $2,600 was paid in cash by Leitelt to Doyle Bros. Thereupon the Rathbuns assigned the license to Leitelt and Ransom, the former furnishing most of the money.

A corporation with a capital stock fixed at $200,000 was then formed "for the purpose of engaging in and carrying on a general lumbering business, including the manufacture, purchase, and sale of lumber, timber, telegraph poles, railroad ties, wood for wood pulp, fence posts, paving blocks, wooden building blocks, shingles, and other products gotten out or manufactured from wood, and the acquiring, holding, and disposing of such lands, tenements, and hereditaments, and such other property of every kind, as shall be necessary for the purposes of said corporation, and such other lands, tenements, and hereditaments as shall be taken in payment of or as security for debts due to such corporation; and also for the further purpose of engaging in and carrying on a general mercantile business in conjunction with the

business above set forth." It was called the Cockburn Island Timber Company, and its stock was held as follows: Adolph Leitelt, of Grand Rapids, 800 shares; Edward Ansorge, of Grand Rapids, 200 shares; Oscar C. Ransom, of Grand Rapids, 1,000 shares; John G. Doyle, of Detroit, 1 share; William H. Doyle, of Detroit, 1 share; Mary J. Doyle, of Detroit, 999 shares; Hattie E. Doyle, of Detroit, 999 shares. Mary J. and Hattie E. Doyle were the wives of William H. and John G. Doyle, respectively. A conveyance of this license was thereupon executed by Leitelt and Ransom to the new company, and operations begun, and were carried on under the management of the Doyles. The brothers did not furnish any money, but some was furnished by their wives and by Leitelt, aggregating some $7,000. A store was opened upon the island, and some timber was cut, the business at the island being under the charge of two employés, Potter and McDougall.

The venture did not prove profitable, and, Leitelt becoming dissatisfied, the following agreement was executed in two parts by Leitelt and the four Doyles:

"Memorandum of agreement made this 12th day of May, 1885, between Adolph Leitelt, of Grand Rapids, Kent county, Michigan, of the first part, and John G. Doyle and Harriet E. Doyle, his wife, and William H. Doyle and Mary Jane Doyle, his wife, of the second part.

"*Whereas,* said parties of the second part have sold and assigned to said party of the first part all their right, title, and interest in and to the timber licenses from the Indian department of Canada in and to the north half of Cockburn island of Canada, granted to said party of the first part and Oscar C. Ransom; and—

"*Whereas,* it is agreed that the same shall be resold and reconveyed to them (the parties of the second part) so soon as the said party of the first part has been able, under and by virtue of the profits and proceeds arising from and under the business to be carried on under said licenses, to pay, liquidate, and discharge all debts and liabilities due by the Cockburn Island Timber Company, and all fair and legitimate expenses incurred in carrying on said business:

"Now, this indenture witnesseth that the said party of the first part, for the considerations above recited, doth hereby covenant, promise, and agree, for himself, his heirs, executors, and administrators, to and with the said parties of the second part, their and each of their heirs, executors, administrators, and assigns, that the said party of the first part, so soon as he has been able to derive from the proceeds and profits arising under said licenses enough to pay off and discharge all debts and liabilities due by the Cockburn Island Timber Company, and all fair and legitimate expenses incurred in carrying on said business, shall and will resell and reconvey unto the said parties of the second part the right, title, and interest so heretofore sold and conveyed, and reinstate them in same plight and condition as they were before said sale; that the said party of the first part will supply all necessary funds and moneys to carry on the business, and employ all necessary servants and employés, and will carry on and conduct the affairs and business on said island (Cockburn) to the best of his ability, and as he, in his judgment, may deem best.

"In witness whereof the parties hereto have hereunto set their hands and seals the day and year above written.
"ADOLPH LEITELT. [Seal.]"

"Memorandum of agreement made this 12th day of May, 1885, between John G. Doyle and Harriet E. Doyle, his wife, and William H. Doyle and Mary Jane Doyle, his wife, of the city of Detroit, Wayne county, Michigan, of the first part, and Adolph Leitelt, of Grand Rapids, Kent county, Michigan, of the second part.

"*Witnesseth*, that the said parties of the first part, for good and valuable consideration to them paid by the said party of the second part (the receipt whereof is hereby acknowledged), have and by these presents do sell, assign, transfer, and set over unto the said party of the second part all and each of their claim, right, title, interest, and demand at law or in equity in and to the timber licenses from the Indian department of Canada in and to the north half of Cockburn island, Canada, granted to the said party of the second part and Oscar C. Ransom, and assigned and set over to the Cockburn Island Company; to have and to hold unto the said party of the second part, his executors, administrators, and assigns.'

"In witness whereof the parties hereto have hereunto

set their hands and seals the day and year above written.

"JOHN G. DOYLE.  [Seal.]
"HARRIET E. DOYLE.  [Seal.]
"WM. H. DOYLE.  [Seal.]
"MARY JANE DOYLE.  [Seal.]"

Leitelt went to the island, but found affairs in a condition which discouraged him, and finally sold the lumber on hand, together with the license, to Hitchcock & Foster, for $2,750. Of this sum $750 was used to pay expenses, and the remaining $2,000 he applied upon the indebtedness of the company to himself.

The complainant subsequently secured a judgment against the Cockburn Island Timber Company for $9,200.40, based upon a claim of $4,933.26 for balance of salary of the Doyles at $3,000 a year, and $509.16 interest upon the same, the remainder being for money advanced by Mrs. Mary J. Doyle and Mrs. Hattie E. Doyle. An execution was issued, and returned unsatisfied, whereupon this bill was filed, alleging the recovery of this judgment and issue and return of execution unsatisfied. It further alleges that Leitelt is president of the company, and one of its directors, and that he was such on May 12, 1885. It further states upon information and belief that "the Cockburn Island Timber Company has equitable interests, things in action, or other property of upwards of $100 in value, exclusive of all prior debts and claims thereon, which the complainant has been unable to discover and reach by execution on his judgment." The bill then proceeds to state that the complainant has been informed and believes that—

"The said Cockburn Island Timber Company, on the said 12th day of May, 1885, conveyed and assigned to the said defendant Adolph Leitelt all of the property, rights, credits, and choses in action belonging to the said corporation, to be held in trust for the said corporation, and that said corporation has a considerable amount of money

and of legal and equitable debts, claims, and demands due to it from the said Adolph Leitelt, and that it has a large amount of leasehold interests and contracts and other interests, legal and equitable, in real estate, money, and other personal property, either in possession or held in trust for it (except such trust as has been created by or the fund held in trust as proceeds from some person other than the said corporation), the situation, value, and particulars of which are unknown to your orator, and your orator is fearful that the said defendants will make away with or place the same beyond the control of this court or a court of law. And your orator further says that, as he is informed and believes to be true, the said Adolph Leitelt, defendant, has acquired to himself, or transferred to others, and has failed to account for the proceeds of the property, credits, and choses in action which were so transferred and assigned to him as aforesaid by the said Cockburn Island Timber Company, and has converted the same to his own use, and refuses to account for the same to the creditors of the said corporation, and has lost or wasted, in violation of his duties as such president, trustee, and agent of the said corporation, a large part of the property of the said corporation."

The bill requires an answer upon oath, praying discovery and account, and a receiver, and that complainant may have satisfaction of his judgment out of the property of the defendant corporation.

The answer of defendant Leitelt denies the ownership by the Cockburn Island Timber Company of any valuable interests, equitable or otherwise, and denies that it has conveyed its property or interests to defendant upon trust or in any other way. It also denies that he has any property belonging to the company, or that he is indebted to it.

A careful perusal of the evidence satisfies us that the Cockburn Island Timber Company has not property to the value of $100 or any other sum; that the timber cut and in its possession was lawfully sold by Leitelt to Hitchcock & Foster; and that the timber license, whether lawfully sold or not, lapsed, so far as such company was concerned, before the bill was filed. The transaction with Hitchcock

& Foster was closed before January 1, 1886, and this bill
was not filed until June 30, 1888.    The interest of the
company in the timber license either passed to them or it
did not.    If it did, it forms no part of the present assets
of the company; if it did not, it has long since ceased to
exist by lapse of time, the company having done nothing
to renew it.    So that, in any event, it cannot be main-
tained that the Cockburn Island Timber Company had at
the time of the filing of this bill any valuable interest in
this license.    There is no evidence that the company has
any other property.    It had at one time a stock of goods
and some timber upon the island, but, previous to the
time that Leitelt took control of its affairs, what remained
of the stock and some of the timber were seized and sold
upon execution, upon a judgment against Campbell and
Pratt and the Doyles.    The remainder of the timber was
seized by the Canadian government for non-payment of
dues, and its shipment thereby delayed, so that, when
Leitelt satisfied these demands and sold the timber, it had
become depreciated in value, and was all sold to Hitch-
cock & Foster as hereinbefore stated.

It would seem, then, that the merits of this case, when
stripped of all disguises, are resolved into the question
whether this complainant shall be allowed to collect his
judgment against Leitelt, in whole or in part, either by
the application upon it of the amount received from Hitch-
cock & Foster, upon the theory that it was unlawfully
applied by Leitelt to his own debt, or by requiring Leitelt
to respond in damages for an improper disposition of the
license.    Aside from any objection that might be raised
upon the pleadings, we think that the proofs do not
warrant either.    The agreement that was made between
Leitelt and the four Doyles shows that Leitelt was put in
charge of the business by consent of all, under circum-
stances which justify the conclusion that he was to get the

debts paid if he could. He was by far the largest creditor, so far at least as advancements were made, both the Doyles being in debt to the concern, except as their claim for salary might offset such indebtedness. We hear nothing of a salary to be paid to Leitelt, though the Doyles appear to have had a salary of $3,000 a year from the time of the organization of the company to the time when Leitelt took control. At the suggestion of the Doyles, Leitelt took a timber expert named Pond, and went to the island, where he was not long in discovering that the prospects of a successful business were dismal. In our judgment, the evidence shows that he did the best thing possible. He sold the timber, which had become injured, after relieving it from the claims against it. Finding that it was impossible to use the timber license to advantage, and therefore unwise to renew it, he sold the interest of the company for the remainder of the period. He used $750 of the money for expenses. The remainder he applied to his own reimbursement for money advanced.

A claim is made that he had no authority to sell all of the property of the corporation, and then pay himself; that the court should therefore lay hold of the proceeds of such sale, and pay complainant, if, indeed, it should not go further, and punish the defendant for such sale, and reward this complainant for his connection with the affair, by permitting the latter to recover his claim by the collection of damages from the former. When we consider that, so far as the case shows, this timber license was sold at the rate of $18,000 to Leitelt; that the Doyles do not show that they paid a dollar towards its purchase, and, indeed, give no light upon what interest they really had in the license, if any; that they and their wives took one-half interest in the same by its conveyance to the company; that not one dollar appears to have been assessed

97 MICH.—20.

or paid upon the large capital stock of the concern; that the Doyles had the sole management of the company for several years at a salary of $3,000 per annum; that when they turned it over to Leitelt it was without funds, and he was the largest creditor,—we do not feel called upon to say that equity requires the defendant to make still further sacrifices, to enable the complainant to collect his claims against the company from one who appears always to have acted in good faith, and for the best interests of the company, and who is himself a much larger sufferer than complainant. There is nothing in the case to move the conscience of a court of equity in behalf of complainant.

The decree dismissing the bill will be affirmed, with costs.

McGRATH, GRANT, and MONTGOMERY, JJ., concurred. LONG, J., did not sit.